UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAINOR GARCIA,<br>Petitioner,<br>v.<br>BRUCE SCOTT et al.,<br>Respondents. | CASE NO. 2:26-cv-02434-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION |

This matter comes before the Court on Mainor Garcia's Petition for a Writ of Habeas Corpus. Dkt. No. 4. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I. BACKGROUND

Garcia is a native and citizen of Honduras who arrived in the United States in September 2019. Dkt. No. 8 at 1. In January 2020, he married a United States citizen, who filed a I-130 petition for him in March 2021. Dkt. No. 12-2 at 8, 14. Garcia's application for adjustment of status was denied in May 2022, and his appeal of that denial was denied in September 2024. *Id.* at 29.

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

On March 28, 2025, Garcia "was arrested by the Whatcom County Sheriff's Office for Theft in the Second Degree, Identity Theft in the Second Degree, and Forgery." *Id.* at 2. On March 24, 2026, "immigration officials apprehended Petitioner pursuant to a targeted enforcement" and issued him a Notice to Appear charging him as removable from the United States under Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) as "an alien present in the United States who has not been admitted or paroled." Dkt. No. 8 at 2; Dkt. No. 9-3 at 2. Immigration and Customs Enforcement ("ICE) then detained him at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 8 at 2. On April 17, 2026, Garcia filed an initial petition for habeas corpus, which was dismissed because he failed to name the warden of the NWIPC in his petition. *Garcia v. ICE Field Officer*, No. 2:26-cv-01341-TMC, Dkt. No. 11 (May 20, 2026).

On May 27, 2026, an immigration judge ("IJ") determined that Garcia was inadmissible, denied his applications for asylum, withholding of removal under INA Section 241(b)(3), and withholding of removal under the Convention Against Torture, and ordered him removed to Honduras. Dkt. No. 8 at 3; Dkt. No. 9-4. On June 22, 2026, Garcia timely appealed this decision to the Board of Immigration Appeals ("BIA"), where it remains pending. Dkt. No. 8 at 3–4.

The case against Garcia related to the Whatcom County charges was dismissed with prejudice on June 8, 2026. Dkt. No. 4 at 11. On June 17, 2026, Immigration Judge John Odell conducted a bond hearing in the Tacoma Immigration Court and denied bond to Garcia, finding that he lacked jurisdiction to order bond and, alternatively, that Garcia "failed to establish that he is not a Flight Risk." *Id.*; Dkt. No. 9-5 at 2. The next day, Garcia requested another bond hearing, which Judge Odell denied because Garcia had "stated no changed circumstances since his last bond hearing." Dkt. No. 8 at 3; Dkt. No. 9-6 at 2. On June 23, 2026, Garcia filed an appeal of the

bond denial to the BIA, which remains pending. Dkt. No. 8 at 4. Respondents[2] claim that there is "no indication that this bond hearing was recorded." Dkt. No. 7 at 4–5.

On July 20, 2026, Garcia filed a pro se petition for writ of habeas corpus. Dkt. No. 4. Respondents filed a return on August 3, 2026. Dkt. No. 7. On August 11, 2026, Garcia mailed a traverse, which (for unknown reasons) was not received by the Clerk's Office until nearly two weeks later, on August 24, 2026, and which was not filed in the docket until August 27, 2026. Dkt. No. 11. On August 26, 2026, the Court ordered Respondents to produce "any document or record that evidences the Immigration Judge's finding at the June 17, 2026 bond hearing that Petitioner poses a flight risk." Dkt. No. 10. Respondents filed a copy of the administrative record related to Garcia's bond proceedings. Dkt. No. 12.

The Court also ordered that if "the Immigration Judge has not yet drafted a bond memorandum, Respondents must provide a timeline for when he will." Dkt. No. 10. Respondents purported to include "the Immigration Judge's bond memorandum" as part of the administrative record. Dkt. No. 12 at 1. The "memorandum" consists of a single paragraph, dated June 29, 2026 and served the following day:

> The court held a bond hearing in [Garcia]'s case on June 17, 2026, and denied his request for bond. [Garcia] has never been admitted to the United States. See Bond Exh. B-3 at 3. He is therefore subject to mandatory detention under INA section 235(b)(2)(A) and Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025). Although [Garcia] had filed a habeas corpus petition, his petition was denied by the federal court. See Bond Exh. B-4. Order: [Garcia]'s request for custody redetermination is denied.

Dkt. No. 12-2 at 55–56. Respondents represented in their August 3, 2026 return that the

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

"Immigration Judge's bond memorandum ha[d] yet to be issued." Dkt. No. 7 at 5. Respondents did not explain in their supplemental filing why they previously represented that the IJ's bond memorandum had not been issued, but now represent that the one-paragraph order from June 29, 2026 is the IJ's bond memorandum.

## II. DISCUSSION

Garcia contends that he is subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under 8 U.S.C. § 1225(b). Dkt. No. 4 at 5. He asserts that Judge Odell's denial of bond was an improper "boiler plate decision" because (1) it was "conducted without proper consideration and an opportunity to be heard," (2) Judge Odell did not consider "all the factors including the latest change of circumstances where [his] misdemeanor case was dismissed," and (3) the decision consisted of "check boxes and that is it," without "any legal basis[.]" *Id.* at 4–5, 7. Garcia claims that he was denied due process with respect to the bond hearing because there was "no contemporaneous record of the hearing" and because he was not "given an opportunity to present evidence" regarding his financial circumstances or "alternative conditions of release[.]" *Id.* at 6. He argues that prudential exhaustion is not required. Dkt. No. 11 at 7–8, 10–13. Finally, Garcia requests release on appropriate conditions and an order enjoining the government "from future detainment without prior notice." Dkt. No. 4 at 8.

Respondents "do not oppose [Garcia] being considered a class member [in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash.)] whose detention is governed by 8 U.S.C. § 1226(a)." Dkt. No. 7 at 2. However, they contend that he has failed to exhaust available administrative remedies and that he has not established that Judge Odell's decision was a violation of due process or an abuse of discretion. *Id.* at 1–2.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion Is Not Required**

Respondents contend that the Court should require Garcia to exhaust his administrative remedies by pursuing his bond denial appeal with the BIA. Dkt. No. 7 at 5–8. Garcia argues that prudential exhaustion is not required because (1) he is challenging the constitutionality of the bond hearing; (2) waiting for BIA review will inflict significant harm, especially since he has been detained since March 24, 2026; and (3) he will likely not receive meaningful appellate review because the BIA "will follow its own precedent *In Matter of [Yajure] Hurtado*" and affirm the bond denial as mandatory. Dkt. No. 11 at 7–8, 10–13.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Specifically, the IJ's decision—and the utter lack of rationale justifying that decision,

as discussed below—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And unless most IJs begin issuing decisions with similarly deficient reasoning, there is no risk of encouraging deliberate bypass of the administrative scheme. *Id.* Furthermore, under the facts of this case, it is not difficult to conclude that Garcia will suffer irreparable injury if his arguably unconstitutional detention continues while he awaits a BIA decision on the merits. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *see* Dkt. No. 12-2 at 4.

Considering the *Puga* factors and irreparable injury, prudential exhaustion is not required here. The Court now turns to whether the IJ's decision was an abuse of discretion.

**C. The IJ Abused His Discretion by Denying Bond**

Respondents contend that Garcia has not identified valid constitutional or legal errors resulting from his bond hearing because Judge Odell had no obligation to record the bond hearing and, in any event, he did not abuse his discretion. Dkt. No. 7 at 8–10. Garcia contends that Judge Odell's bond denial decision was an abuse of discretion because Odell did "not explain[] how he arrived" at the conclusion that Garcia is a flight risk and did not consider the *In re Guerra* factors, many of which "strongly favor" a finding that he is not a flight risk. Dkt. No. 11 at 15–16.

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Id.* at 785 (citation modified).

1. <u>The IJ's Decision</u>

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk

of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1077–78 (W.D. Wash. 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1102 (W.D. Wash. 2026) (same).

Accordingly, Garcia's allegation in his habeas petition—that Judge Odell abused his discretion when he determined that Garcia was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review. Judge Odell's bond denial decision, issued on June 17, 2026, consists of a checkbox form. Dkt. No. 9-5; Dkt. No. 12-2 at 50–51. It orders "Mandatory Detention under Matter of YAJURE HURTADO, 29 I&N Dec. 216 (BIA 2025)" and, in the alternative, that "Respondent has failed to establish that he is not a Flight Risk." Dkt. No. 12-2 at 50–51. On June 29, 2026, Judge Odell issued a further order, which states in full:

> The court held a bond hearing in Respondent's case on June 17, 2026, and denied his request for bond. Respondent has never been admitted to the United States. See Bond Exh. B-3 at 3. He is therefore subject to mandatory detention under INA section 235(b)(2)(A) and Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025). Although Respondent had filed a habeas corpus petition, his petition was denied by the federal court. See Bond Exh. B-4. Order: Respondent's request for custody redetermination is denied.

Dkt. No. 12-2 at 55.[3] The order does not mention the *Guerra* factors, much less consider them.

Judge Odell did not describe the burden of proof in his decision. Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The Supreme

---

[3] Again, Respondents have offered conflicting representations regarding whether this order qualifies as the IJ's bond memorandum and when it was available. *Compare* Dkt. No. 7 at 12 (August 3, 2026 return stating that "although the Immigration Judge's bond memorandum has yet to be completed, one should be forthcoming."), *with* Dkt. No. 12 at 1 (certified administrative record filed by Respondents on September 4, 2026, including "the Immigration judge's bond memorandum" dated June 29, 2026). These representations were made to the Court pursuant to Rule 11.

Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

The federal appellate courts that have addressed this question are split. The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government—but those Circuits do not agree on the standard of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge* test before holding that with respect to a petitioner who had been in custody for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence).

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (no due process violation with respect to burden remaining with detainee to show that he is not a danger to the community or a flight risk).

The Ninth Circuit has declined to require the government to meet a clear and convincing burden of proof to justify continued detention of a noncitizen in the specific context of a second bond hearing under Section 1226(a). *Compare Singh*, 638 F.3d at 1203 (holding that "[g]iven the

substantial liberty interest at stake" for noncitizens subject to prolonged detention under Section 1226(a), "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond"); *Martinez*, 124 F.4th at 786 (in a case involving a petitioner detained under Section 1226(c), describing *Singh* as "offer[ing] the high-water mark of procedural protections required by due process"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (noting that "after the Supreme Court's decisions in Jennings and Arteaga-Martinez, it remains undetermined whether the Due Process Clause requires additional bond procedures under any immigration detention statute," and concluding that the Due Process Clause did not entitle the petitioner "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

2. Abuse of Discretion

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence, the Court finds that Judge Odell abused his discretion in this case. *See Martinez*, 124 F.4th at 779.

The record before the Court is wholly devoid of any indication that Judge Odell considered the *Guerra* factors in making a flight-risk determination, or that he considered any of the evidence submitted by Garcia in relation to the bond hearing. Garcia submitted documentation describing his strong ties to the community, his role as his U.S. citizen wife's caregiver (his wife has multiple complex health conditions, including vision loss and kidney failure, and requires transportation to thrice-weekly dialysis appointments), and his two U.S. citizen children. Dkt. No. 12-2 at 4–23. Judge Odell's bond memorandum considers none of this evidence, instead stating without *any* reasoning whatsoever that Garcia is a flight risk. Judge Odell's main reason for denying bond was that Garcia was mandatorily detained under *Yajure Hurtado* and INA section 235(b)(2)(A) (8 U.S.C. § 1225(b)(2)(A))—a position recently rejected by the Ninth Circuit, *see Rodriguez Vazquez*

*v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). And although the decision mentions that Garcia's prior habeas petition was denied, the denial was without prejudice because Garcia had merely failed to name the correct respondent, not because the petition lacked substantive merit. *See Garcia v. ICE Field Officer*, No. 2:26-cv-01341-TMC, Dkt. No. 11 (May 20, 2026). Judge Odell did not explain why a previously-denied habeas order has any bearing on Garcia's risk of flight. The record is otherwise devoid of any evidence supporting a flight risk finding, which is particularly troubling given that the Court allowed Respondents a second chance to produce "any document or record that evidences the Immigration Judge's finding at the June 17, 2026 bond hearing that [Garcia] poses a flight risk." Dkt. No. 10.

For all these reasons, Judge Odell failed to accord Garcia the process due to him, abusing his discretion and violating Garcia's Fifth Amendment rights. *See Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)); *see also, e.g.*, *Avila Garcia v. Scott et al.*, 2:26-cv-02307-BAT, Dkt. No. 9 at 8–9 (W.D. Wash. July 23, 2026) (ordering release when "the IJ failed to provide any rationale for his alternative finding of flight risk and failed to engage whatsoever with the factors weighing for or against such a finding"); *Saparali Uulu v. Scott et al.*, 2:26-cv-01631-TL, Dkt. No. 15 at 18 (W.D. Wash. July 10, 2026) (ordering release when "the IJ abused his discretion when he found, purportedly on the evidence presented to him (none of which [wa]s probative of flight risk), that Petitioner pose[d] a risk of flight"); *Lima Gamez v. Hernandez*, No. 2:26-CV-01104-BAT, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026) (ordering release when the "record contain[ed] no indication the immigration judge considered any" of the *Guerra*

factors); *Minango v. Bondi*, No. 2:26-CV 00235-ART-BNW, 2026 WL 1257028, at *4 (D. Nev. May 6, 2026) (finding a due process violation where the IJ "failed to apply the correct legal standard as required by due process"); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026) (finding that petitioner's "continued detention fails to comply with his constitutional due process rights" given his "inadequate bond hearing"); *W.T.M.*, 2026 WL 262583, at *4 (bond denial was "constitutionally deficient, because there [we]re no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk").

**D. The Court Denies Injunctive Relief**

Garcia also requests an order enjoining "the government from future detainment without prior notice." Dkt. No. 4 at 8. Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Even assuming without deciding that the Court has authority to grant injunctive relief in this case, Garcia's petition does not allege that his re-detention is likely. *See generally* Dkt. No. 4. And without argument or evidence that his unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925,

929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for a permanent injunction is denied.

**E. Remedy**

Because Garcia's June 17, 2026 bond hearing was legally and constitutionally inadequate, and because the Court finds no adequate basis for Garcia's continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri*, 2026 WL 622302, at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the petition for a writ of habeas corpus, Dkt. No. 4, and orders as follows:

(1) Respondents shall release Garcia from custody within 24 hours under terms consistent with Section 1226(a) and return his personal property to him;

(2) Respondents shall file a Status Report by September 15, 2026, confirming that Garcia has been released.

Dated this 14th day of September, 2026.

Lauren King
United States District Judge